UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARCGENSON MARC,

    Plaintiff,

v.                                  Case No: 6:13-cv-559-Orl-28KRS

CITY OF ORLANDO, FLORIDA,
MICHAEL MORESHI, and JAY
DRAISIN,

    Defendants.

## ORDER

Marcgenson Marc has sued Defendants City of Orlando and Orlando police officers Michael Moreschi[1] and Jay Draisin, alleging that the officers arrested him without probable cause for making a false report and tampering with evidence. In his sixteen-count Complaint, Mr. Marc seeks relief under 42 U.S.C. § 1983, claiming that Defendants' conduct violated his rights under the Fourth Amendment to the United States Constitution. He also claims that Defendants violated his rights under state law. Defendants have filed a Motion to Dismiss (Doc. 4) based on qualified immunity, sovereign immunity, and failure to state a cause of action. Because the officers are protected by qualified immunity, certain claims are barred by sovereign immunity, and Mr. Marc has failed to comply with pleading standards, the Motion to Dismiss must be **GRANTED IN PART**.

---

[1] Based on the Charging Affidavit and Defendants' filings, it appears that Mr. Marc spelled Officer Moreschi's name incorrectly in the Complaint. Mr. Marc should correct this error in any future filings.

I. **Background**

On January 14, 2009, Johnnie Jackson was fatally shot while seated in his pick-up truck in the parking lot of an Orlando apartment complex. (Charging Affidavit, Ex. A to Doc. 19 at 2-3). Officers Moreschi and Draisin responded to the scene of the shooting and spoke with a juvenile witness who stated that after shots were fired, a man exited the passenger side of Jackson's vehicle, got in a red Ford Mustang, and fled the scene. (Id. at 3). Using a surveillance video, the officers determined that a red Ford Mustang registered to Mr. Marc followed Mr. Jackson's vehicle into the apartment complex parking lot a short time before the murder. (Id.). The next day, the officers found Mr. Marc's red Mustang parked near the residence of Hyzens, Mr. Marc's brother. (Id.). The officers noticed that the windows were down despite cold temperatures and that the interior of the vehicle had recently been shampooed. (Id.). The car's floor mats were missing, and new floor mats, still in their package, had been placed in the backseat. (Id.).

When the officers questioned Mr. Marc, he acknowledged that his vehicle was depicted in the surveillance tapes driving into the apartment complex parking lot just before the murder. (Id.). He stated that on the day of the murder, he left the car and keys at the home of Victor Filisaime; he was gone from Mr. Filisaime's home with a friend for approximately two hours, and when he returned his Mustang was gone. (Id. at 3-4). Mr. Marc explained that after he returned to the Filisaime home and saw that his car was missing, his friend drove him to Hyzens's workplace, and Hyzens verified this account. (Id. at 4). When questioned, Mr. Marc stated that "he was not worried about the whereabouts of his Mustang and said it was not unusual for 'them' to borrow it." (Id.). Mr. Marc stated that his other brother, Wilgue Pierre, called him the day after the

2

murder to tell him the car was at their uncle's auto shop. (Id.). Mr. Marc picked it up that day after it had been cleaned. (Id.).

The officers spoke to a store manager at a nearby Advanced Auto Parts store, confirming that floor mats of the type found in Mr. Marc's vehicle were purchased from the store the day after the murder. (Id.). Additionally, the officers spoke with the owner of a car detailing business who confirmed that Mr. Marc brought the car in to be washed, detailed, and shampooed. (Id.). The owner stated that he did not notice any blood in the car, but there were no floor mats in the car at the time. (Id.). When shown pictures of Mr. Marc, Hyzens, and Mr. Pierre, the owner immediately identified Mr. Marc as the person who brought the car in to be cleaned. (Id.).

The officers then met with Mr. Marc's uncle at his auto shop, and the uncle stated that he was not at the shop when Mr. Marc's car was there. (Id. at 5). Mario Aristor, the uncle's employee, told the officers that Mr. Pierre called the auto shop less than two hours after the murder requesting a truck to tow Mr. Marc's vehicle to the shop and that Mr. Marc called Mr. Aristor later that night to confirm the car was at the shop. (Id.). The next day, Mr. Aristor saw Mr. Marc come to the auto shop and pick up his Mustang. (Id.). Another shop employee confirmed the call from Mr. Pierre and the towing of Mr. Marc's vehicle to the shop. (Id.). Mr. Pierre later told the officers that he was in Deltona with his girlfriend at the time of the murder, did not know where his brother's car was, and did not inform his brother that the car was at the auto shop. (Id.).

Mr. Marc was arrested on January 17, 2009, and charged with false report to a law enforcement officer under section 837.05(2), Florida Statutes, and tampering with evidence under section 918.13, Florida Statutes. (Id. at 2). On January 18, 2009, state

court Judge Belvin Perry found no probable cause to believe that Mr. Marc committed the crimes of which he was accused. (Order of Commitment, Ex. B to Doc. 19 at 2). On July 10, 2009, the state attorney filed a "no information notice" for both charges against Mr. Marc. (No Information Notice, Ex. C to Doc. 19 at 2).[2]

Mr. Marc then filed this lawsuit. Counts I through V of the Complaint allege § 1983 claims against the officers. Counts I and II are brought for unlawful search and seizure, (Doc. 2 ¶¶ 22-48), while Counts III and IV are brought for arrest without probable cause, (id. ¶¶ 49-66). Counts I-IV all allege similar facts supporting a claim for false arrest, so the inquiry under § 1983 will be the same for each of the first four counts. Count V alleges that Officer Moreschi violated Mr. Marc's Fourth and Fourteenth Amendment rights by making a material misrepresentation in the charging affidavit. (Id. ¶¶ 67-76). Count VI alleges a failure to train and/or supervise under § 1983 against the City of Orlando, (id. ¶¶ 77-94), and Counts VII-XVI allege state law claims of malicious prosecution, false imprisonment, and intentional infliction of emotional distress against the officers, (id. ¶¶ 95-162).

## II.   Motion to Dismiss Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must

---

[2] The record before the Court does not include an explanation for Judge Perry's finding of no probable cause or the prosecutor's decision to not go forward with the case against Mr. Marc.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead facts allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### III. Federal Claims

Section 1983 allows suits against government officials for claims alleging that those officials deprived a plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Defendants argue that Mr. Marc's six § 1983 claims fail because the officers have qualified immunity and because Mr. Marc failed to state a claim upon which relief can be granted in Count V and to state a basis for municipal liability in Count VI.

#### A. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To establish eligibility for qualified immunity, "a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred." Hawthorne v. Sheriff of Broward Cnty., 212 F. App'x 943, 946 (11th Cir. 2007). The discretionary function inquiry is not focused on the exercise of discretion but instead on whether the acts in question "are of a type that fell within the

employee's job responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Courts must determine "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id. In determining whether the employee was performing a discretionary function, the Court must consider the general nature of the actions in question, temporarily disregarding an unconstitutional purpose. Id. at 1266. Here, the officers were performing a discretionary function. They were pursuing a job-related goal in effectuating an arrest for alleged crimes relating to a homicide investigation. The officers appear to have done so "through means that were within [their] power to utilize," namely interviewing relevant witnesses, filing a charging affidavit, and arresting Mr. Marc. These are basic tasks of law enforcement officers, and though Mr. Marc contests this issue, Defendants have sufficiently shown that their actions were discretionary functions.

Once the government official has demonstrated the performance of a discretionary function, the burden shifts to the plaintiff to demonstrate "that the official is not entitled to qualified immunity by showing (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time the violation occurred." Hawthorne, 212 F. App'x at 946 (quoting Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004)). These two factors can be considered by district courts in either order. Pearson, 555 U.S. at 236.

In a § 1983 claim for false arrest, "'an officer is entitled to qualified immunity where that officer had arguable probable cause' to effectuate the arrest." Hawthorne, 212 F. App'x at 946 (quoting Davis v. Williams, 451 F.3d 759, 762-63 (11th Cir. 2006)).

6

"Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officers effectuating the arrest could have believed that probable cause existed." Id. Thus, arguable probable cause depends on what constitutes probable cause under the relevant jurisdiction. Davis, 451 F.3d at 764. Whether arguable probable cause exists is based on the totality of the circumstances. Id. at 763.

    1.    *False Report to Law Enforcement Authorities*

The officers charged Mr. Marc with providing a False Report to Law Enforcement Authorities under section 837.05(2), Florida Statutes (2012),[3] which provided that "[w]hoever knowingly gives false information to a law enforcement officer concerning the alleged commission of a capital felony, commits a felony of the third degree." In determining whether the officers are entitled to qualified immunity on the claim of false arrest for this crime, the Court must determine whether the officers had arguable probable cause to believe that the elements of the offense were satisfied.

Mr. Marc does not dispute that Officers Draisin and Moreschi are law enforcement officers who were investigating a capital offense. Thus, the only issue is whether the officers had arguable probable cause to believe that Mr. Marc knowingly gave false information to them. Mr. Marc does not address the standard of arguable probable cause; instead, he focuses on the finding of no probable cause by Judge Perry and the No Information filed by the state attorney's office. However, arguable probable cause is a lower standard than probable cause, and Mr. Marc has not met his burden of showing that the officers did not have arguable probable cause to arrest him for

---

[3] This section was amended in 2013, but its relevant language at the time of Mr. Marc's arrest is set forth above.

providing a false statement. The Charging Affidavit identified three people who made statements contrary to those of Mr. Marc, including Mr. Marc's brother, Mr. Pierre. Based on these statements, the officers had arguable probable cause to believe that Mr. Marc knowingly provided false statements.

      2.    *Tampering with or Fabricating Physical Evidence*

The officers are also entitled to qualified immunity on the claim of false arrest based on the second charge, tampering with or fabricating physical evidence. Section 918.13, Florida Statutes (2013), provides:

> (1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
> (a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation . . . .

The issue here is whether the officers had arguable probable cause to believe that Mr. Marc's actions satisfied the requirements of this statute.

First, the officers had reason to believe that Mr. Marc altered the evidence. Witnesses had provided statements that the car was cleaned by Mr. Marc the day after the murder, and the officers observed that new floor mats had recently been purchased for the car. (See Doc. 19-1). The officers also had reason to believe that Mr. Marc altered the vehicle knowing that an investigation was pending or about to begin and that he did so with the purpose to impair the vehicle's availability in such an investigation. The officers were aware of video and eyewitness evidence that Mr. Marc's vehicle was at the scene of the murder as well as evidence that Mr. Marc had gotten his car cleaned and shampooed and had bought new floor mats the day after the murder. (See id.). Based on this evidence, the existence of which Mr. Marc does not dispute, a reasonable

officer could have believed that Mr. Marc had knowledge of an upcoming homicide investigation and acted with the purpose of impairing the vehicle's availability to be used in such an investigation. The officers had arguable probable cause to believe Mr. Marc had violated section 918.13.

### 3. Conclusion as to Qualified Immunity

Because the officers had arguable probable cause to arrest Mr. Marc for both a false report to a law enforcement officer and tampering with evidence, the officers are entitled to qualified immunity on Mr. Marc's claims of false arrest. Thus, Mr. Marc's § 1983 false arrest claims (Counts I through IV) must be dismissed with prejudice.

### B. Adequacy of Pleading

Many of the counts brought by Mr. Marc are duplicative, and it is difficult to determine the discrete factual bases supporting his claims. Defendants argue that Count V (Material Misrepresentations in the Charging Affidavit) is duplicative of Counts I (Unlawful Search and Seizure) and III (Arrest without Probable Cause) against Officer Moreschi. (Doc. 9 at 8). Because Count V alleges affirmative misrepresentations made by Officer Moreschi while Counts I and III allege an arrest without probable cause, Count V is a distinct claim from Counts I and III and must be analyzed separately.

Defendants alternatively argue that Count V does not state a claim for which relief may be granted. Mr. Marc alleges that Officer Moreschi "made material misrepresentations and omissions in the Charging Affidavit"—namely, the assertion in the affidavit that Officer Moreschi received sworn testimony. (Doc. 2 ¶ 70). Mr. Marc alleges that this was a material misrepresentation because Officer Moreschi did not provide the testimony to the Court, the state attorney's office, or Mr. Marc's counsel.

9

(See id.).[4] However, Officer Moreschi's failure to provide the sworn testimony in the initial stages of the case does not mean that his statement about sworn testimony in the Charging Affidavit was false. In Count V, Mr. Marc does not allege any other specific statements that are false, and he merely makes conclusory allegations about material misrepresentations. In support of his argument that his Complaint is adequately pleaded, Mr. Marc cites only caselaw predating the United States Supreme Court's pleading standards set forth in Iqbal and Twombly. (See Doc. 10 at 6). Mr. Marc fails to meet those standards, and his material misrepresentation claim (Count V) must be dismissed without prejudice.

C. **Claim against the City**

Mr. Marc has also sued the City of Orlando, asserting a failure to train or supervise under § 1983 (Count VI). Municipal liability under § 1983 must be predicated on an underlying constitutional or statutory violation. See, e.g., City of L.A. v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). The Eleventh Circuit has found that when an officer had qualified immunity for § 1983 claims of false arrest, the plaintiff has no basis on which to establish municipal liability. See

---

[4] Defendants attached transcripts of sworn statements to their motion to dismiss that they say served as evidence for the arrest. (See Statement Trs., Docs. 9-1 & 9-2). For a document attached to a motion to dismiss to be considered without the court converting the motion into one for summary judgment, the document must be central to the plaintiff's claim and its authenticity must not be challenged. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, Mr. Marc argues that the transcripts are not central to his claim and challenges their authenticity. (Supplemental Resp., Doc. 25 at 2). The Court thus declines to consider the transcripts and decides the motion to dismiss based only on the allegations in the pleadings and the contents of the exhibits referenced in the Complaint that Mr. Marc subsequently filed. (See Doc. 19 & Attachs.).

Howell v. City of Lithonia, 397 F. App'x 618, 621 (11th Cir. 2010) ("We conclude that no constitutional violation occurred; and if one occurred, [the officer] was entitled to qualified immunity in his individual capacity. Because [the officer] committed no constitutional violation, [Plaintiff] cannot show a basis on which to establish municipal liability against the City . . . ." (footnote omitted)). Because the officers are entitled to qualified immunity for Counts I through IV and because Mr. Marc has been unable to state a claim on which relief can be granted against the officers as to Count V, Mr. Marc's claim against the city also fails, and Count VI must be dismissed.

IV. **State Law Claims**

    A. **Malicious Prosecution**

In Counts VII, VIII, and X, Mr. Marc asserts claims for malicious prosecution under state law against the officers in their official capacities, seeking to hold the City—not the individual officers—liable. Defendants argue that these counts should be dismissed due to section 768.28(9)(a), Florida Statutes. This section is part of Florida's waiver of sovereign immunity in tort actions and provides that municipalities cannot be held liable for acts committed by their officers "in bad faith or with malicious purpose." Mr. Marc responds only by referring to the notice provisions in section 768.28(6)(a) and does not address Defendants' argument that malicious prosecution counts cannot properly be alleged against officers in their official capacities. (See Doc. 10).

The elements of a malicious prosecution action in Florida are as follows:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present

11

defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). The requirement of malice means that the malicious prosecution claims cannot be maintained against the City of Orlando or against any of its officers in their official capacity under section 768.28(9)(a). Thus, the malicious prosecution claims against the officers in their official capacities (Counts VII, VIII, and X) must be dismissed with prejudice.[5]

### B. False Imprisonment

In Counts XI and XIII, Mr. Marc asserts false imprisonment claims under state law against the officers in their individual capacities. In these counts, Mr. Marc alleges that the officers' conduct "was committed in bad faith." (Doc. 2 ¶¶ 130, 139). On the other hand, in Counts XII and XIV, Mr. Marc asserts false imprisonment claims against the officers in their official capacities. Mr. Marc does not allege bad faith in these counts. Defendants argue that, like the claims of malicious prosecution, the claims of false imprisonment should be dismissed due to Section 768.28(9)(a).

"The tort of 'false imprisonment' or 'false arrest' is the unlawful restraint of a person against his or her will, and the gist of the action is the unlawful detention of the person and the deprivation of his or her liberty." Spears v. Albertsons, Inc., 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003). A plaintiff claiming false imprisonment "must show the restraint was unreasonable and unwarranted under the circumstances." Id. Bad faith or malicious purpose is not an element of the cause of action.

---

[5] In Count IX, Mr. Marc asserts a malicious prosecution claim against Officer Moreschi in his individual capacity. Defendants do not argue that this count should be dismissed, so it will move forward.

Florida courts have held that bad faith or malicious purpose alleged in a complaint serves to allege malice for the purposes of section 768.28(9)(a) even where malice is not an element of the cause of action. See Willis v. Dade Cnty. Sch. Bd., 411 So. 2d 245, 246 (Fla. 3d DCA 1982) ("We find no error in the determination of the trial court with respect to Count I that a complaint which alleges a 'malicious' assault and battery fails to state a cause of action pursuant to Section 768.28, Florida Statutes . . . ."); accord Fletcher v. City of Miami, 567 F. Supp. 2d 1389, 1394 (S.D. Fla. 2008) (citing Willis and dismissing false arrest claim against city where the plaintiff alleged that acts were committed willfully, wantonly, and with malice). If malice is established in this case, sovereign immunity is not waived, and a false imprisonment suit would only be proper against the individual officers. If, on the other hand, malice is not established, sovereign immunity is waived, and the suit would only be proper against the city. Thus, Mr. Marc has sufficiently pleaded alternative claims to comply with section 768.28(9)(a), and Defendants' Motion to Dismiss must be denied as to Mr. Marc's false imprisonment claims (Counts XI through XIV).

C.  **Intentional Infliction of Emotional Distress**

In Counts XV and XVI, Mr. Marc asserts claims for intentional infliction of emotional distress against the officers in their individual capacities. The elements of this cause of action are: 1) the defendant's conduct was intentional or reckless; 2) the defendant's conduct was outrageous; 3) the defendant's conduct caused emotional distress; and 4) the emotional distress caused by the defendant was severe. See, e.g., Clemente v. Horne, 707 So. 2d 865, 866 (Fla. 3d DCA 1998). Defendants argue that these counts contain only conclusory allegations and are insufficient to survive a motion to dismiss. (Doc. 9 at 10).

13

Mr. Marc alleges in the Complaint that the officers' "conduct of fabricating evidence, making misleading statements and omission[s], conducting unlawful seizures, encouraging such actions, and failing to conduct a proper investigation was outrageous." (Doc. 2 ¶¶ 147, 156). These allegations, if true, may be outrageous. No other allegations in these counts were specifically alleged to be conclusory by Defendants, so the motion to dismiss Mr. Marc's intentional infliction of emotional distress claims (Counts XV and XVI) must be denied.

V.   **Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss (Doc. 4) is **GRANTED IN PART AND DENIED IN PART**. Counts V and VI of Mr. Marc's Complaint are **DISMISSED WITHOUT PREJUDICE**. Counts I-IV, VII, VIII, and X are **DISMISSED WITH PREJUDICE**. Counts IX and XI-XVI are not dismissed. Mr. Marc may file an amended complaint **on or before November 1, 2013**. Failure to file an amended complaint by this deadline will result in dismissal of Mr. Marc's federal claims with prejudice.

**DONE** and **ORDERED** in Orlando, Florida on October 15, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties